# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FORT MYERS DIVISION

| | |
|---|---|
| JOHN A. BROWN,<br><br>　　　　Plaintiff,<br><br>v.<br><br>REALPAGE, INC. A/K/A LEASING DESK SCREENING<br>　　　　Defendant. | Case No.:<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>1. **FCRA, 15 U.S.C. §1681** *et seq.* |

## COMPLAINT

John A. Brown ("Plaintiff" or "Mr. Brown"), by and through his counsel, brings the following Complaint against RealPage, Inc. a/k/a LeasingDesk Screening ("Defendant" or "RealPage") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§1681, *et seq.*, arising out of a tenant screening report that Defendant published to Plaintiff's prospective landlord, which falsely portrayed Plaintiff as having been evicted twice.

## INTRODUCTION

1. This is an individual action for damages, costs, and attorney's fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C.

1

§§1681, *et seq.* ("FCRA").

2. Defendant is a consumer reporting agency ("CRA") that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports, also known as tenant screening reports, generated from its database and furnishes these tenant screening reports to mortgage brokers, landlords, and property management companies who use the reports to make decisions regarding prospective borrowers and tenants.

3. Defendant assembled and published an inaccurate tenant screening report to Plaintiff's prospective landlord, which included two eviction records.

4. In fact, Plaintiff has never been evicted in his life.

5. Plaintiff's prospective landlord denied Plaintiff's housing application after receiving a tenant screening report from Defendant, in which Defendant published the inaccurate eviction records.

6. Defendant's inaccurate reporting could have easily been avoided had Defendant performed a cursory review of the widely available underlying public court records from Lee County, Florida regarding the civil eviction records prior to publishing the information to Plaintiff's prospective landlord.

7. Had Defendant performed even a cursory review of the underlying public court records, it would have discovered that the eviction actions were dismissed.

8. Defendant does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures resulted in Plaintiff's report being grossly inaccurate.

9. Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking housing by prejudicing their prospective landlords with inaccurate information.

10. Defendant's inaccurate report cost Plaintiff the ability to rent the apartment unit that was suitably accommodating of his needs, causing him physical injury as a result of emotional distress, embarrassment, inconvenience, anxiety, fear of homelessness, and financial loss.

11. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

12. As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. §1681e(b) of the FCRA.

## PARTIES

13. John A. Brown ("Plaintiff" or "Mr. Brown") is a natural person residing in Fort Myers, Florida, and is a "consumer" as that term is defined in 15 U.S.C. §1681a(c).

14. Defendant RealPage, Inc. a/k/a LeasingDesk Screening ("Defendant" or "RealPage") is a Delaware corporation doing business throughout the United States, including the State of Florida and in this District, and has a principal place of business located at 2201 Lakeside Boulevard, Richardson, Texas 75082.

15. RealPage may be served through its registered agent in Florida, C T Corporation System located at 1200 South Pine Island Road, Plantation, FL 33324.

16. Among other things, Defendant sells consumer reports, often called tenant screening reports, to mortgage brokers, property management companies, and landlords for their use in deciding whether to rent or otherwise offer housing to a prospective tenant. These reports are provided in connection with a business transaction initiated by the consumer.

17. Defendant is a consumer reporting agency as defined in 15 U.S.C. §1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for tenant screening purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and

furnishing such consumer reports.

## JURISDICTION AND VENUE

18. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §1331 and 15 U.S.C. §1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

19. Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

20. Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

21. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. §1681.

22. Congress, concerned about inaccuracies in consumer reports,

specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. §1681e(b).

23. Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

## THE FCRA'S PROTECTIONS FOR HOUSING APPLICANTS

24. Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates tenant screening reports like the one Defendant prepared in Plaintiff's name.

25. The FCRA provides a number of protections for housing applicants who are the subject of tenant screening reports for the purpose of securing housing and credit.

26. In the parlance of the FCRA, tenant screening reports are "consumer reports," and providers of tenant screening reports, like Defendant, are "consumer reporting agencies." 15 U.S.C. §§1681a(d) and (f).

27. The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. §1681.

28. Under 15 U.S.C. §1681e(b), consumer reporting agencies are required

"to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

29. Defendant disregarded its duties under the FCRA with respect to Plaintiff's tenant screening report.

## DEFENDANT'S ILLEGAL BUSINESS PRACTICES

30. Over the past 15 years, there has been increased collection and aggregation of consumer data, including eviction and civil judgment records. As a result of the increasing availability of this data, there has been a boom in the tenant screening industry.

31. Tenant Screening Reports are generally created by running automated searches through giant databases of aggregated criminal record data. The reports are created and disseminated with little to no manual, in-person review, and the underlying court records are rarely directly reviewed in creating tenant screening reports.

32. Tenant Screening companies, like Defendant, collect millions of records from a number of sources with data from county, state, and federal level sources. The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

33. Given that Defendant is in the business of selling tenant screening

reports, Defendant should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

33. Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

35. Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

36. Defendant charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

37. Appropriate quality control review of Plaintiff's report would have made clear that Defendant was reporting two eviction records in an inaccurate and materially misleading manner.

38. As a provider of tenant screening reports, Defendant should be aware of the FCRA requirements and is likely a member of the Professional Background Screening Association ("PBSA"). PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

# FACTS

**Plaintiff Applies for an Apartment with Fort Myers Presbyterian Community**

39. Plaintiff has been interested in living at Fort Myers Presbyterian Community ("FMPC") for a long time.

40. The apartment building is a 62+ community that caters to low-income and disabled individuals.

41. The rent at FMPC was only $550 per month, the neighborhood was safe, and the apartment building was waterfront property.

42. Plaintiff also liked that the community was filled with other individuals similar in age to him and that the units came with panic buttons in case of emergency.

43. FPMC was also close to the downtown area, restaurants, and a variety of things to do.

44. FPMC was also in a much quieter and safer part of town. Plaintiff's current apartment is very loud, and crime is rampant; the police are present on a daily basis.

45. However, because of the large demand and small number of apartments, prospective residents must wait on a waiting list.

46. Plaintiff has been on the waiting list for over two years.

47. In or around mid-September 2023, Plaintiff *finally* received the call he had long waited for—a call from FMPC offering him the opportunity to rent an apartment with them.

48. Plaintiff immediately said yes. He was very excited for the opportunity to finally move there.

49. Further, this opportunity came at the perfect time. In or around August 2023, Plaintiff's temporary Section 8 expired, and accordingly, his share of the rent nearly doubled what it was before, to approximately $1,200.

50. Thereafter, Plaintiff submitted an application and consented to a background check ("tenant screening report").

51. Plaintiff had no reason to believe that he wouldn't pass the background check. Therefore, Plaintiff began packing up his current apartment while he waited for his official approval letter.

**Defendant Published an Inaccurate Tenant Screening Report to FPMC**

52. FMPC contracted with Defendant to conduct tenant screening reports on prospective tenants to determine whether the applicant is eligible to rent an apartment.

53. On or about September 25, 2023, FMPC ordered a tenant screening report on Plaintiff from Defendant.

54. On or about September 25, 2023, pursuant to its policies and

procedures, Defendant sold a tenant screening report about Plaintiff to FMPC.

55. Therein, Defendant published information including a compilation of Plaintiff's criminal history and civil records history.

56. Defendant published inaccurate information about Plaintiff.

57. Specifically, Defendant's tenant screening report about Plaintiff included two grossly inaccurate and stigmatizing eviction records from Lee County, Florida ("Eviction Records at Issue").

58. The Eviction Records at Issue appeared in the tenant screening report as follows:

Suits & Judgments for Eviction, Possession and/or Non-Payment of Rent Summary

Run date 9/25/2023

| Jur code | Record ID | Defendant | Date | County/State | Plaintiff | Amt | Amt setId | Result | Notes |
|---|---|---|---|---|---|---|---|---|---|
| FLLEEC1 | MJ61212242 | JOHN BROWN | 12/07/2022 | LEE/FL | BAY PARK FM LLC | $0.00 | $0.00 | No data available on judgment results | |
| FLLEEC1 | MJ61212160 | JOHN BROWN | 12/14/2022 | LEE/FL | PALM VISTA FM LLC | $0.00 | $0.00 | No data available on judgment results | |

59. The eviction records reported by Defendant about Plaintiff are inaccurate because the cases were dismissed in December 2022.

60. By failing to report the accurate disposition, Defendant made it appear as though Plaintiff were evicted, or that he had pending eviction actions against him.

61. Plaintiff has never been evicted is his life.

62. A cursory review of the widely available underlying public court records confirms that Plaintiff was never evicted. Rather, the public record confirms that the Eviction Records at Issue were dismissed on December 27, 2022 and

December 30, 2022.

63. The sole reason the inaccurate eviction records were reported was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the tenant screening report it sold about Plaintiff to Plaintiff's prospective landlord.

64. Had Defendant followed reasonable procedures, it would have discovered that Plaintiff has never been evicted, that the cases had been dismissed over eight months before.

65. In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Plaintiff's prospective landlord inaccurate information about Plaintiff, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. §1681e(b).

## FMPC Denies Plaintiff's Rental Application

66. On or about September 25, 2023, FPMC contacted Plaintiff and informed him that his application was denied as a result of the eviction records reported on his tenant screening report.

67. Shortly thereafter, Plaintiff also received a denial letter, dated September 25, 2023, with a copy of the tenant screening report enclosed, stating the reason for the denial was "rental history unsatisfactory or insufficient."

68. Plaintiff was very panicked, confused, and concerned about the impact

of the inaccurate reporting of his eviction records, in relation to the FMPC, but also the impact of the same on his future.

69. Defendant reported two eviction actions without a disposition giving the impression that Plaintiff was evicted twice, or that Plaintiff had two pending eviction actions against him, when in fact Plaintiff has never been evicted and the eviction actions were dismissed. The underlying public court record information was widely available to Defendant —online no less— prior to publishing Plaintiff's tenant screening report to FMPC, but Defendant failed to perform even a cursory review of such information.

70. Plaintiff contacted FMPC and explained that he has never been evicted and that the evictions actions were dismissed.

71. FPMC told Plaintiff that would need to provide them with proof from the court.

72. Unfortunately, before Plaintiff was able to secure proof, FPMC moved onto other candidates.

73. Defendant's inaccurate reporting had caused Plaintiff prospective landlord to deny Plaintiff's rental application.

74. Plaintiff continued to follow up with FMPC in hopes that another apartment was available, however, when Plaintiff most recently contacted FPMC, he was informed that he had now dropped to thirtieth in line on the waiting list.

75. Plaintiff reasonably believes that due to Defendant's inaccurate reporting in the first instance, FMPC formed a negative opinion about Plaintiff and moved on to other candidates.

76. Accordingly, Defendant's tenant screening report led FMPC to deny Plaintiff for a housing opportunity that met his needs, including those attendant to affordability and safety.

77. The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to address.

78. Under common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

79. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. §1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

80. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs 1 to 79 as if fully stated herein.

81. Defendant is a "consumer reporting agency" as defined by 15 U.S.C. §1681a(f).

82. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. §1681a(c).

83. At all times pertinent hereto, the above-mentioned tenant screening report was a "consumer report" as that term is defined by 15 U.S.C. §1681a(d).

84. Defendant violated 15 U.S.C. §1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the tenant screening report it sold about Plaintiff as well as the information it published within the report.

85. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

86. Defendant willfully violated 15 U.S.C. §1681e(b) in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. Alternatively, Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. §1681o.

87. Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and/or §1681o.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for the following relief:

i. Determining that Defendant negligently and/or willfully violated the FCRA;

ii. Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii. Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv. Granting further relief, in law or equity, as this Court may deem appropriate and just.

## **DEMAND FOR JURY TRIAL**

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

//


//

Dated: October 31, 2023,    **CONSUMER ATTORNEYS**

*/s/ Santiago J Teran*
Santiago J Teran (FL Bar No. 1018985)
E-mail: steran@consumerattorneys.com
Consumer Attorneys
2125 Biscayne Bldv., Ste 206
Miami, FL 33137
Direct: (305) 433-3252
Facsimile: (718) 715-1750

Consumer Attorneys
8245 N. 85th Way
Scottsdale, AZ 85258

*Attorney for Plaintiff*
*John A. Brown*